Filed 4/9/26  P. v. Tellez CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAVIER TELLEZ,<br><br>    Defendant and Appellant. | B339022<br><br>(Los Angeles County Super. Ct. No. 24SFCF00674) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bernie C. LaForteza, Judge.  Affirmed in part and reversed in part.

Christina Vanarelli, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, and Blake R. Armstrong, Deputy Attorney General, for Plaintiff and Respondent.

Javier Tellez (defendant) pled no contest to inflicting corporal injury on his domestic partner, and he was sentenced to nine years in prison. The only issues raised in this appeal concern the propriety of financial obligations imposed by the court at sentencing.

## I. BACKGROUND

In 2024, the Los Angeles County District Attorney charged defendant with attempting to murder G.C., infliction of corporal injury to G.C. (Pen. Code,[1] § 273.5, subd. (a)), and resisting an executive officer (§ 69). At arraignment, defendant (then age 53) pled not guilty and his attorney, a deputy public defender, represented defendant could not pay the bail requested by the prosecution ($1,030,000) but could pay a smaller amount because he had "been steadily employed" and "makes approximately $4,000 a month." After finding defendant posed a safety risk, the court remanded defendant into custody, set bail at the amount requested by the prosecution, and issued a criminal protective order for the benefit of victim G.C.

Roughly a week after arraignment, defendant agreed to plead no contest to the domestic violence charge (§ 273.5, subd. (a)) pursuant to a negotiated disposition. Prior to the change of plea hearing, defendant initialed, signed, and submitted to the trial court a pre-printed "Plea Form, with Explanations and Wavier of Rights." Among other things, defendant placed his initials in a box corresponding to disclosures regarding "Restitution, Statutory Fees, and Assessments"; those disclosures stated the court would order him to pay certain fines and fees and warned he "must prepare financial disclosure statements to assist the court in determining [his] ability to pay; and refusal or

---

[1] Undesignated statutory references that follow are to the Penal Code.

failure to prepare the required financial disclosure statements may be used against [him] at sentencing." The record does not show that defendant ever submitted a financial disclosure statement.

At the change of plea and sentencing hearing in May 2024, defendant pled no contest as agreed. The court accepted the plea, sentenced him to nine years in state prison (the upper term of four years plus five years for a section 12022.7, subdivision (e) enhancement), and dismissed the remaining attempted murder and resisting an executive officer charges. The court also imposed the following obligations: a $30 court facilities assessment (Gov. Code, § 70373); a $40 court operations assessment (§ 1465.8, subd. (a)(1)); a $300 restitution fine—the minimum amount (§ 1202.4, subd. (b)(1)); a $300 parole revocation restitution fine (§ 1202.45), which the court stayed; and a $500 "domestic violence payment."[2] The court did not identify the statutory basis for this last $500 payment at the hearing, but a minute order issued in connection with the hearing states the payment was imposed pursuant to section 1203.097, subdivision (a)(5).

After the trial court pronounced sentence, defense counsel (a different deputy public defender than the one who represented defendant at his arraignment) asked the court to waive all fines

_____

[2]    The court's imposition of these obligations came after it imposed the aforementioned prison term and calculated defendant's custody credits, ordered defendant to pay restitution in an amount to be determined, and entered protective orders for the victim and others. The court's on-the-record remarks were as follows: "The court . . . orders the defendant to provide D.N.A. samples pursuant to . . . section[s] 296 and 296.1. [¶] Pay a mandatory restitution fine of $300; a parole revocation restitution fine in the same amount, with payment stayed; a court facilities assessment of $30; a court operations assessment of $40; a domestic violence payment of $500."

and fees on the ground defendant was "indigent."  Defendant did not proffer any evidence to support his attorney's indigency assertion, nor did defendant request a separate hearing on his ability to pay.

The trial court declined to waive the fines and fees.  The court found that "in light of what [it] ha[d] heard so far," the interests of justice did not warrant waiving the financial obligations.  The court also reasoned, "He's got nine years to pay off the fines and fees.  He will have the time to pay [them] off in prison."

## II.  DISCUSSION

Defendant contends the requirement to make a $500 domestic violence payment is not authorized by section 1203.097 because the trial court denied probation.  This argument has merit and we will modify the judgment accordingly.

That leaves only the question of the propriety of the $40 court operations assessment, $30 court facilities assessment, and $300 restitution fine.  After briefing in this appeal was complete, our Supreme Court decided *People v. Kopp* (2025) 19 Cal.5th 1, and we invited the parties to submit supplemental briefs addressing that decision.  Defendant argues we should strike the assessments (dubbed "ancillary costs" by the *Kopp* court (*id*. at 24)) and the restitution fine, while the Attorney General maintains *Kopp* is irrelevant to the issues presented on appeal because the trial court found defendant, even if lacking the then-present means to pay the total $370 obligation, had the ability to pay that amount during his nine-year prison sentence.  The Attorney General has the better argument, and we see no basis to reverse the trial court's finding that defendant would have the ability in prison to make payments to satisfy the minimal financial obligations imposed.

4

A.  *The Argument Challenging the Domestic Violence Fine Is Meritorious*

The minute order the trial court issued in connection with the sentencing hearing states the trial court imposed the $500 "domestic violence payment" pursuant to section 1203.097. That statute, however, expressly conditions imposition of the payment on a grant of probation: "If a person is granted probation . . . the terms of probation shall include all of the following: [¶] . . . [¶] A minimum payment by the defendant of a fee of five hundred dollars ($500) . . . ." (§ 1203.097, subd. (a)(5)(A); see also § 273.5, subd. (g) ["If probation is granted to a person convicted under subdivision (a), the court shall impose probation consistent with the provisions of Section 1203.097"].) Because the trial court denied probation and sentenced defendant to prison, the $500 section 1203.097 payment is unauthorized and will be stricken.

The Attorney General, however, argues we should not strike the payment because the trial court did not articulate—on the record at the sentencing hearing—any statutory justification for imposing it. The Attorney General's view is that the court could have imposed, as a matter of discretion and in any amount up to $6,000, a fine pursuant to a different statute: section 273.5, subdivision (a). (§ 273.5, subd. (a) ["A person who willfully inflicts corporal injury resulting in a traumatic condition upon a victim described in subdivision (b) is guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not more than one year, or by a fine of up to six thousand dollars ($6,000), or by both that fine and imprisonment"].) We will not affirm what *was* done based on what *could* have been done because there is no indication that the court exercised its section 273.5, subdivision (a) discretion in this case. (See, e.g., *People v. Penoli* (1996) 46 Cal.App.4th 298, 302 ["a ruling otherwise within the trial court's power will nonetheless be set aside where it appears from the record that in issuing the ruling the court failed to

5

exercise the discretion vested in it by law"].)  The court's own minute order and the $500 amount of the payment itself—the minimum required by section 1203.097 (all other fines the court imposed were set at the minimum amounts too)—reveal the court acted pursuant to section 1203.097, not via an exercise of its discretion under section 273.5.

> B. *The Challenge to Ancillary Costs and the Restitution Fine Lacks Merit*

The *Kopp* opinion does not address the ability of a sentencing court to consider, in imposing ancillary costs, a defendant's ability to pay while serving a prison sentence.  (*Kopp*, *supra*, 19 Cal.5th at 31-32 (conc. opn. of Liu, J.) ["Today's opinion does not reach several issues that are integral to the instant matter and have arisen in hundreds of cases since we granted review [including] . . . how courts are to evaluate a criminal defendant's ability to pay ancillary costs, including who bears the burden of proof in establishing an inability to pay and whether courts may consider future prison wages in that assessment"].)  Naturally, *Kopp* thus does not disturb the holdings of myriad court of appeal decisions that hold it is appropriate to consider expected future financial resources.  (See, e.g., *People v. Cervantes* (2020) 46 Cal.App.5th 213, 229; *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1060 ["It is illogical to conclude that appellants will not have an ability to begin paying at least some of the imposed fees, fines and assessments while they are incarcerated"]; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076; see also §§ 1202.4 [authorizing consideration of a defendant's "future earning capacity" when determining ability to pay a restitution fine above the minimum amount], 2700 ["every able-bodied prisoner" must work while imprisoned].)  Separately, defendant does not seek a remand to develop his challenge to the restitution fine.

6

We agree with precedent holding sentencing courts may consider, when fashioning financial obligations, a defendant's expected future financial resources while serving his or her sentence. In this case, the record adequately supports the trial court's finding that, even assuming defendant did lack the ability to pay the ancillary costs and restitution fine at the time of sentencing,[3] he would be able to make payments on the minimal financial obligations imposed while incarcerated. There is accordingly no basis for reversal.

---

[3] The only evidence before the court concerning defendant's ability to pay suggested the contrary: at defendant's arraignment—held just a week before sentencing—his attorney advised defendant had been steadily employed making $4,000 per month.

## DISPOSITION

The judgment is modified to strike the $500 domestic violence payment.  As so modified, the judgment is affirmed.  The trial court is directed to provide a copy of an amended abstract of judgment reflecting the modification to the Department of Corrections and Rehabilitation.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

We concur:


HOFFSTADT, P. J.


KIM (D.), J.

8